O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| In re: | Case № 5:15-cv-01562-ODW |
| | U.S. Bankruptcy Court Case Nos. |
| CITY OF SAN BERNARDINO, |    Adverse Action: 6:15-ap-01119-MJ |
| CALIFORNIA, |    Main Action: 6:12-bk-28006-MJ |
|         Debtor. | |
| | **OPINION** |
| SAN BERNARDINO CITY | **Appeal from the United States** |
| PROFESSIONAL FIREFIGHTERS | **Bankruptcy Court for the Central** |
| LOCAL 891; GREGORY PARKER; SAM | **District of California, Riverside** |
| BASHAW; CHRIS NIGG; THOMAS | **Division;** |
| JEFF ENGLISH; RICHARD LENTINE; | **The Honorable Meredith A. Jury** |
| STEVE TRACY; KENNETH KONIOR, | **Presiding** |
|         Appellants, | |
|    v. | |
| CITY OF SAN BERNARDINO, | |
| CALIFORNIA; and ALAN PARKER, | |
|         Appellees. | |

## I. INTRODUCTION

This is the fifth appeal taken by the City of San Bernardino's firefighters in the City's ongoing bankruptcy saga. Appellants San Bernardino City Professional Firefighters Local 891, Gregory Parker, Sam Bashaw, Chris Nigg, Thomas Jeff English, Richard Lentine, Steve Tracy, and Kenneth Konior (collectively "Firefighters") appeal from a judgment entered in favor of Appellees City of San Bernardino and Alan Parker following the bankruptcy court's determination that neither the City's charter nor state law prohibit the City from outsourcing firefighting services. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). For the reasons discussed below, the Court **AFFIRMS** the bankruptcy court's order in full.[1]

## II. FACTUAL BACKGROUND

The extensive factual and procedural history underlying the City's bankruptcy and the labor dispute between the City and the Firefighters has been recited by this Court at length in prior orders and opinions,[2] and thus the Court will recite only the salient facts here. In August 2012, after projecting a budget deficit of $45.8 million, the City filed a voluntary petition under Chapter 9 of Title 11 of the United States Code. (AER 4.) After the City unsuccessfully attempted to negotiate a modification to its collective bargaining agreement with the Firefighters, the bankruptcy court granted the City's motion to set aside the agreement. (AER 5–6.)

Shortly thereafter, the City began to consider outsourcing firefighting services as a way of narrowing its budget deficit. (AER 6, 37; Appellee's Req. for Judicial Notice ("Appellee's RJN"), Ex. 2, ECF No. 23.) In April 2015, the City received

---

[1] After considering the briefs and excerpts of record filed by each party, the Court finds that the decisional process would not be significantly aided by oral argument because the facts and legal arguments are adequately presented in the briefs and record. Fed. R. Bankr. P. 8019(b)(3).

[2] *In re City of San Bernardino, Cal.*, 530 B.R. 474, 477–80 (C.D. Cal. 2015); *In re City of San Bernardino, Cal.*, 530 B.R. 489, 492–93 (C.D. Cal. 2015); *In re City of San Bernardino, Cal.*, No. 5:15-CV-00042-ODW, 2015 WL 2153770, at *1–2 (C.D. Cal. May 7, 2015); *In re City of San Bernardino, Cal.*, No.5:15-CV-00815-ODW, 2015 WL 6957998, at *1–2 (C.D. Cal. Nov. 10, 2015).

proposals from the County of San Bernardino and the private entity Centerra Group, LLC to provide the City with firefighting services. (Appellee's RJN at Ex. 2.) Upon learning that the City was considering outsourcing firefighting services, the Firefighters filed this adversary proceeding seeking (in relevant part) a judicial declaration that both the City's charter ("Charter") and state law prohibit the City from doing so. (AER 35–38.) After determining that no such prohibition exists, the bankruptcy court dismissed the claim without leave to amend and entered judgment thereon under Rule 54(b).[3] (AER 166–245, 264–65.) The Firefighters timely appealed. (AER 261–71.) That appeal is now before this Court for consideration.

### III. STANDARD OF REVIEW

Appellate review of a dismissal under Rule 12(b)(6) is *de novo*. *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015); *In re Shumate Spokane, LLC*, No. AP 11-80035-FLK, 2015 WL 5013358, at *3 (B.A.P. 9th Cir. Aug. 25, 2015). "Such review is generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice. In undertaking this review, [the court] will 'accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs,' and will hold a dismissal inappropriate unless the complaint fails to 'state a claim to relief that is plausible on its face.'" *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011) (citations omitted).

### IV. ISSUES ON APPEAL

The Firefighters raise three main issues on appeal: (1) Did the bankruptcy court err in determining that the Charter does not bar the City from outsourcing firefighting services? (2) Did the bankruptcy court err in determining that state law does not prohibit the City from outsourcing firefighting services to private entities? (3) Did the bankruptcy court err in denying leave to amend?

---

[3] The Firefighters assert seven other claims in this case. Those claims are still being litigated before the bankruptcy court.

## V. DISCUSSION

### A. The City's Charter

The Firefighters advance a litany of reasons why the bankruptcy court erred in determining that the Charter does not prohibit the City from outsourcing firefighting services. First, they contend that the Charter contains no affirmative grant of power allowing the City to outsource firefighting services. Second, they contend that various provisions in the Charter directly conflict with the outsourcing of such services. Third, they contend that the bankruptcy court erred by not considering sources beyond the text of the Charter, such as a City Attorney opinion and ballot pamphlets issued to voters. Finally, they contend that the City's civil service system implicitly prohibits the outsourcing of firefighting services. The Court finds none of these reasons convincing.

"'The same rules of statutory interpretation that apply to statutory provisions also apply to local charter provisions.'" *Bohbot v. Santa Monica Rent Control Bd.*, 133 Cal. App. 4th 456, 462 (2005) (citation omitted). The primary goal in interpreting a city charter is to ascertain the voters' intent. *Mason v. Ret. Bd. of City & Cnty. of S.F.*, 111 Cal. App. 4th 1221, 1227 (2003). "That intent should be determined, if possible, from the language of the [charter]." *Id.* The court should give "a plain and commonsense meaning" to the words of the charter unless they are specially defined. *MacIsaac v. Waste Mgmt. Collection & Recycling, Inc.*, 134 Cal. App. 4th 1076, 1083 (2005). That said, "[t]he courts 'should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'" *Aquilino v. Marin Cnty. Emps. Ret. Ass'n*, 60 Cal. App. 4th 1509, 1516 (1998). "If there is no ambiguity in the language of the statute, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." *Id.* "If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." *Id.*

### 1. Affirmative Grant of Power

The Firefighters fundamentally misunderstand the source of a charter city's power. Article XI, section 5(a) of the California constitution "represents an affirmative constitutional grant to charter cities of all powers appropriate for a municipality to possess." *State Bldg. & Const. Trades Council of Cal., AFL-CIO v. City of Vista*, 54 Cal. 4th 547, 556 (2012) (brackets and internal quotation marks omitted). Thus, city charters "operate[] not as a grant of power, but as an instrument of limitation and restriction on the exercise of power over all municipal affairs which the city is assumed to possess." *Domar Elec., Inc. v. City of L.A.*, 9 Cal. 4th 161, 170 (1994). As a result, charters are "construed to permit the exercise of all powers not expressly limited by the charter or by superior state or federal law." *Taylor v. Crane*, 24 Cal. 3d 442, 450 (1979); *Domar Elec., Inc.*, 9 Cal. 4th at 171 ("Charter provisions are construed in favor of the exercise of the power over municipal affairs and 'against the existence of any limitation or restriction thereon which is not expressly stated in the charter.'" (citation omitted)). "Restrictions on a charter city's powers may not be implied." *Taylor*, 24 Cal. 3d at 451. "All rules of statutory construction as applied to charter provisions are subordinate to this controlling principle." *City of Grass Valley v. Walkinshaw*, 34 Cal. 2d 595, 599 (1949) (citations omitted).

The Firefighters flatly ignore this wealth of authority, and instead make circular arguments purporting to prove that the City cannot act without a specific grant of authority in the Charter. These arguments are simply wrong: the City's power to act derives from the California constitution, not its Charter. *Domar Elec., Inc.*, 9 Cal. 4th at 170. Needless to say, the Court rejects the Firefighters' argument.

### 2. Direct Conflict with Outsourcing

Nothing in the Charter expressly states that firefighting services cannot be outsourced. However, the Firefighters nevertheless contend that Charter sections

5

40(f), 180, 183, 184, and 186[4] directly conflict with the outsourcing of such services, and thus prohibit the City from doing so. (Op. Br. at 19–24.) The Court disagrees.

Section 40(f) states: "[The] Council shall have power to establish and maintain a fire department, prescribe fire limits and adopt regulations for the protection of the City against fires." (AER 72.) Sections 180 through 186, in turn, govern various aspects of any established fire department or police department. (AER 91–95.) The pertinent provisions are as follows:

> **Section 180. Powers of Mayor and Common Council.** The police and fire departments shall be under the general supervision of the Mayor. The City Manager shall be the immediate supervisor of the . . . Chief of the Fire Department. Neither the Mayor nor the City Manager shall interfere or attempt to interfere with the discharge of those duties of the Police or Fire Chief(s) the performance of which are required by law. . . .
>
> **Section 183. Fire Department – Membership.** The Fire Department shall consist of a Chief of the Fire Department and as many ranking officers, firefighters and other employees as the Mayor and Council may determine.
>
> **A. Chief of the Fire Department – Duties.** The Mayor shall appoint a Chief of the Fire Department . . . . The Chief of the Fire Department shall have the powers and duties that are now or that may hereafter be conferred upon chiefs of fire departments by the laws of the State, . . . and he/she shall perform such other duties as may be prescribed by the Mayor and Common Council or by the City Manager.
>
> **Section 184. Supervision of City Manager Over Funds, Moneys, Etc.** The City Manager shall supervise and possess power and authority over all the funds, moneys and appropriations for the use of the Police and Fire Department, also the organization, government and discipline, subject to the restrictions in Section 180 of this Charter, of said Departments, and shall have control of all the property and equipments belonging to the same. . . .
>
> **Section 186. Salaries.** There is hereby established for the City of San Bernardino a basic standard for fixing salaries, classifications, and working conditions of the employees of the Police and Fire Departments

---

[4] The Firefighters point to several other provisions in their Complaint and the briefing before the bankruptcy court, but do not appear to raise them on appeal.

>of the City of San Bernardino, and the Mayor and the Common Council in exercising the responsibility over these departments vested in them by this Charter shall hereafter be guided and limited by the following provisions . . . .

(AER 91–92.)

The Court agrees with the bankruptcy court's determination that section 40(f) simply empowers the City to establish a fire department; it does not require the City to create a fire department, let alone a fire department staffed by City employees. *See Domar Elec., Inc.*, 9 Cal. 4th at 170 ("[T]he enumeration of powers does not constitute an exclusion or limitation.").

The Court also agrees with the bankruptcy court that sections 180 through 186 do not prohibit or conflict with the outsourcing of firefighting service, albeit under a different rationale. The bankruptcy court reviewed each requirement in sections 180 through 186 and determined that the City could theoretically still comply with those requirements while outsourcing firefighting services. (AER 181–86.) The Court, on the other hand, concludes that because sections 180 through 186 only govern the operation of an internal fire department once created, those sections simply do not apply if the City chooses to outsource firefighting services.

The Court does not dispute the Firefighters' contention that sections 180 through 186 envision an internal fire department. Indeed, the very word "department" suggests an internal rather than external branch of operations, and it would be an uncomfortable stretch to characterize a service that the City outsources to an external provider as a "department" of the City. Moreover, the substantial control that the Charter requires the City to exert over the fire department—such as supervising the organization government of the department, overseeing the discipline of the firefighters, and setting their salary and working conditions—fits much better with the idea that these sections govern a fire department staffed by City employees.[5]

---

[5] This is not to say that it would be *impossible* for the City to outsource firefighting services while still complying with these sections if it had to.

But just because sections 180 through 186 *presuppose* the existence of an internal fire department does not mean they *require* the creation of an internal fire department. Any such reading would conflict with section 40(f). Section 40(f) "empowers" the City to create a fire department that will ultimately be governed by sections 180 through 186—that is, the City may, but is not required to, create an internal fire department. If sections 180 through 186 were read to independently require an internal fire department—as opposed to merely governing an internal fire department once created—it would clash with section 40(f)'s clearly discretionary language. The Court therefore concludes that sections 180 through 186 do not mandate an internal fire department.

### 3. Ballot Pamphlets

The Firefighters argue that reversal is warranted because the bankruptcy court refused to consider ballot pamphlets to ascertain voter intent. (Op. Br. at 14–17.) But instead of presenting any ballot pamphlets to either the bankruptcy court or to this Court to consider, the Firefighters appear to assume that the question of voter intent as reflected in ballot pamphlets is a disputed question of fact that allows them to continue with their claim past the pleading stage. (SER 298–99; AER 193–95.) This is incorrect. Charter interpretation is always a question of law, and it is up to the courts to determine voter intent from the appropriate sources—whether from the words of the charter or from arguments contained in ballot pamphlets. *Schmeer v. Cnty. of L.A.*, 213 Cal. App. 4th 1310, 1317 (2013) ("If the language is ambiguous, we may consider the analyses and arguments contained in the official ballot pamphlet as extrinsic evidence of the voters' intent and understanding of the initiative. The construction of [a] statute or an initiative, *including the resolution of any ambiguity*, is a question of law that we review de novo." (citation omitted) (emphasis added)). The time to present any ballot pamphlets was in the briefing before the bankruptcy court, and the Firefighters' failure to do so constitutes a waiver of that issue.

/ / /

### 4. City Attorney Opinions

The Firefighters next argue that the Court should defer to an opinion drafted by the City Attorney in 1991 that interprets the Charter as prohibiting the City from outsourcing police services. (Op. Br. at 17–19.) The Firefighters contend that the 1991 opinion is relevant because the provisions in the Charter relating to police services are identical to those relating to firefighting services. The City counters that the 1991 opinion was superseded by a 2015 opinion concluding that firefighting services specifically can be outsourced, and that the Court should defer to that opinion instead of the 1991 opinion. (Ans. Br. at 24–25.) While the Court agrees that the 1991 opinion is not entitled to any deference, it is because it lacks sufficient indicia of authoritativeness on the issue, not because it is "superseded" by the 2015 opinion.

The Court initially notes that California affords far less deference to an agency's interpretation of a statute than either party is willing to admit. In *Yamaha Corp. of Am. v. State Bd. of Equalization*, 19 Cal. 4th 1 (1998), the court held that "the binding power of an agency's interpretation of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation." *Id.* at 7 (emphasis omitted). Thus, "[w]here the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth. Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative." *Id.* at 7–8 (citations omitted). The court specifically disapproved of *DeYoung v. City of San Diego*, 147 Cal. App. 3d 11, 21 (1983), to the extent that it gave unquestioned deference to a city attorney's interpretation of a city charter.

Here, the Court finds the City Attorney's 1991 opinion to be "of little worth." First, the City Attorney does not possess any more expertise than the Court on this issue. The question whether the Charter expressly prohibits the outsourcing of

firefighting services is not one that is "technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion." *Yamaha Corp. of Am.*, 19 Cal. 4th at 12. While the City might arguably have deeper knowledge than the courts on the Charter's "legislative history" (i.e., circumstances surrounding its adoption, ballot pamphlets, etc.), the opinion is not based on any such material; rather, it merely reviews the four corners of the Charter. (AER at 110–12.) Such inquiry is the bread and butter of the judicial branch.

Second, there are unresolved questions concerning the City Attorney's impartiality. A city attorney typically owes a fiduciary duty to the city, *Handverger v. City of Winooski*, 191 Vt. 84, 88 (2011), and publishing an opinion contrary to the city's best interests would arguably breach that duty. Indeed, the City Attorney's 2015 opinion highlights this very conflict. That opinion—which concluded that the City has the authority to outsource firefighting services—was written by the attorney representing the City in both this appeal and the underlying Motion to Dismiss. (SER 422–25.) The City Attorney was therefore duty-bound to reach the conclusion it did no matter the merits of the issue, which means that the opinion should command no more deference than the City's briefing.[6] *Yamaha Corp. of Am.*, 19 Cal. 4th at 24 (Mosk, J., concurring) (an agency's litigating position is entitled to little deference). Admittedly, there is no indication that the 1991 opinion was written during litigation involving that issue, but the inherent ethical conflict faced by the City Attorney nevertheless counsels against viewing the 1991 opinion as an impartial memorandum. So while the Court may consider the persuasiveness of the opinion's arguments, the Court sees no reason to give the opinion any deference.

### 5. Civil Service Provisions

The Firefighters also contend that the Charter's civil service system implicitly prohibits the City from outsourcing firefighting services. (Op. Br. at 26–28.) The

---

[6] For this reason, the Court concludes that the 2015 opinion does not "supersede" the 1991 opinion in any manner that is relevant to this appeal.

bankruptcy court concluded that the Firefighters waived this argument by not including it as a basis for relief in their Complaint, and the City urges the Court find the same. (AER 213–15; Ans. Br. at 28.) The Court disagrees that the purported insufficiency of the Complaint bars consideration of the argument, but nonetheless determines that a civil service system does not necessarily prohibit a charter city from outsourcing firefighting services.

The Court first clarifies the precise question raised on appeal. The Firefighters argue only that the inherent nature of a civil service system implicitly prohibits a municipality from outsourcing firefighting services under *State Comp. Ins. Fund v. Riley*, 9 Cal. 2d 126 (1937), and its progeny. The Firefighters do not argue (or at least not sufficiently to preserve the issue on appeal) either that a particular Charter provision relating to the civil service system *expressly* prohibits outsourcing, or that the civil service *rules* (promulgated by the implementing agency) bar outsourcing.

### i. Sufficiency of the Complaint

The Court concludes that the City waived its insufficient pleading argument. The City never made the argument to the bankruptcy court, and thus cannot make the argument now on appeal. *See Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 819 (9th Cir. 1992). Moreover, given that the City addressed the Charter's civil service provisions extensively in its Motion to Dismiss (SER 280–83, 358–60), it would be inequitable to conclude that the Complaint did not put the City on notice that the civil service provisions would be at issue in this lawsuit. *See In re Marino*, 37 F.3d 1354, 1357 (9th Cir. 1994) ("The purpose of notice pleading is to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (citation omitted)); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). The Court therefore will consider the merits of the argument.

### ii. Outsourcing Under a Civil Service System

The Court determines that *Riley* does not warrant reversal of the bankruptcy court's order. In *Riley*, the California Supreme Court held that the California

constitution's civil service system for state employees prohibited the state from outsourcing state services without first showing that "the services contracted for . . . are of such a nature that they could [not] be performed by one selected under the provisions of civil service." *Riley*, 9 Cal. 2d at 135. In *Prof'l Eng'rs v. Dep't of Transp.*, 15 Cal. 4th 543, 568 (1997), the court affirmed *Riley*'s principal holding. The court noted that the constitution's civil service provisions do not "expressly prohibit[] or restrict[] private contracting. . . . 'Rather, [*Riley*] emanates from an *implicit necessity* for protecting the policy of the organic civil service mandate against dissolution and destruction.'" *Id.* at 548 (emphasis added) (citation omitted).[7]

There are two reasons why *Riley* is inapplicable here. First, the fact that the constitution's civil service system only impliedly prohibits outsourcing counsels strongly against applying *Riley* to city charters. The Supreme Court has repeatedly held that "in construing [a] city's charter[,] a restriction on the exercise of municipal power may not be implied." *City of Grass Valley*, 34 Cal. 2d at 599; *see also, e.g.*, *Domar Elec., Inc.*, 9 Cal. 4th at 171; *Taylor*, 24 Cal. 3d at 450. "All rules of statutory construction as applied to charter provisions are subordinate to this controlling principle." *City of Grass Valley*, 34 Cal. 2d at 599. It would clearly run afoul of this fundamental principle to hold that a charter city's civil service system could impliedly prohibit it from outsourcing firefighting services.

Second, *Riley* and its progeny are based on the constitution's particular civil service system and the policy behind that system, not on some abstract concept of how all civil service systems are supposed to operate. *See Prof'l Eng'rs*, 15 Cal. 4th at 548–50. Because the Firefighters do not show that the constitution's civil service system is materially similar to the City's civil service system, the Court sees no reason to extend *Riley* to the Charter at issue.

---

[7] As the City notes, *Riley* and *Professional Engineers* were superseded by constitutional amendment with respect to architect and engineering work. *Prof'l Eng'rs in Cal. Gov't v. Kempton*, 40 Cal. 4th 1016, 1037 (2007). However, the doctrine otherwise retains vitality.

The three Supreme Court cases to consider *Riley* in the context of city charters support these distinctions. In *In re McMillin's Estate*, 46 Cal. 2d 121 (1956), the court held that *Riley* did not apply to the County of Los Angeles' charter because *Riley* "concerned contracts for services to be performed for the *state or a state agency*, acting in its governmental or proprietary capacity, wherein the *state* civil service structure was bypassed." *Id.* at 130 (emphasis added). In *City & Cnty. of S.F. v. Boyd*, 17 Cal. 2d 606 (1941), the court cited *Riley* only for the proposition that "a public agency may contract for expert services unless specifically prohibited by *constitutional* or statutory provision." *Id.* at 618 (emphasis added). The court went on to hold that the reason the City of San Francisco's civil service system did not prohibit outsourcing was because the charter's civil service provisions contained no express restriction on doing so. *Id.* at 618–20.

*Kennedy v. Ross*, 28 Cal. 2d 569 (1946), is more equivocal, but still does not compel a different result. There, the court held that *Riley* did not prohibit the City from outsourcing certain engineering services because an exception to *Riley* applied—that is, the services were "not such as could adequately be rendered by an existing department of the city." *Id.* at 573. Notably, however, the court never specifically held that *Riley* applied in the first instance—i.e., that a charter city's civil service system ever *could* implicitly prohibit outsourcing in the absence of an applicable exception. *Id.* In light of *Boyd* and *McMillin's Estate*, the Court declines to imply such a holding in *Kennedy*.

The Court reiterates that it expresses no opinion on whether a particular civil service provision within the Charter expressly prohibits outsourcing, or whether the civil service rules bar outsourcing. The bankruptcy court is free to consider these arguments during the remainder of the adverse proceeding if it deems appropriate.

**B.    State Law**

The Firefighters also contend that state law prohibits the City from outsourcing firefighting services to private entities. (Op. Br. at 10–12, 28–31.) Before considering

the merits of this argument, the Court must address a jurisdictional question.

### 1. Mootness

Shortly after briefing on appeal was complete, the Court requested supplemental briefing on whether the City was still considering outsourcing firefighting service to a private entity, and thus if the issue whether state law prohibits the City from doing so is moot on appeal. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (an appeals court is "obligated to consider sua sponte whether [it] ha[s] subject matter jurisdiction"). The City argues that the issue is moot because it elected to outsource firefighting services to the County of San Bernardino instead of a private entity. (Appellee's Supp. Br. at 4–6.) The Firefighters counter that the issue is not moot because the City could still outsource to a private entity if annexation to the County falls through. (Appellant's Supp. Br. at 3–5.) Given the high burden of establishing mootness based on voluntary cessation, the Court concludes that the issue is not moot.

"[F]ederal courts may not 'give opinions upon moot questions or abstract propositions.'" *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (citation omitted). Generally, "[a] case is moot on appeal if no live controversy remains at the time the court of appeals hears the case." *NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007). However, "[v]oluntary cessation of challenged conduct moots a case . . . only if it is '*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (citation omitted). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (brackets and internal quotation marks omitted). The fact of mootness can be determined on appeal. *Clark v. K-Mart Corp.*, 979 F.2d 965, 967 (3d Cir. 1992); *Cedar Coal Co. v. United Mine Workers of Am.*, 560 F.2d 1153, 1166 (4th Cir. 1977).

In April 2015, the City received two proposals to provide the City with firefighting services: one from the County of San Bernardino and one from the private entity Centerra Group, LLC. (AER 6, 37; Appellee's RJN, Ex. 2.) On August 24, 2015, after the bankruptcy court dismissed the Firefighters' claim and the instant appeal was taken, the City's common council elected to outsource firefighting services the County. (Appellee's RJN, Ex. 1.) Since then, various disputes have erupted over the terms of the annexation, which the City has described as potential "deal breakers." (Decl. Glave, Ex. C, ECF No. 29.) The City Manager has expressed the need to have a "Plan B" in case annexation falls through or the Firefighters prevail in this litigation, but so far the City has not formulated an alternative plan. (*Id.*) The City does not appear to have ruled out outsourcing to a private entity if annexation fails.

Given the uncertainty surrounding the annexation process, and the possibility that the City may reconsider outsourcing to a private entity, the Court cannot conclude that it is "absolutely clear" that outsourcing to a private entity might not be put back on the table. Accordingly, the issue is not moot on appeal.

**2.      State Law Prohibition on Outsourcing**

The Firefighters argue that providing firefighting services is an issue of statewide concern (as opposed to a municipal affair), and that state law prohibits the outsourcing of such services to private entities. (Op. Br. at 10–12, 28–30.) The Court disagrees with both arguments.[8]

The California constitution "affirmatively grants charter cities sovereignty over those matters deemed to be 'municipal affairs.'" *Cal. Fed. Sav. & Loan Ass'n*, 54 Cal. 3d at 13; *see also* Cal. Const. art. XI, § 5(a). Matters of statewide concern, on the other hand, are subject to control by the state legislature. *Cal. Fed. Sav. & Loan Assn*, 54 Cal. 3d at 13. The courts evaluate any conflict between state law and municipal

---

[8] The City contends that the Firefighters did not make this argument before the bankruptcy court and thus waived it on appeal. Regardless, the Court will exercise its discretion to consider the argument. *See Emmert Indus. Corp. v. Artisan Assoc., Inc.*, 497 F.3d 982, 986 (9th Cir. 2007).

action using a four-step process. "First, a court must determine whether the city ordinance at issue regulates an activity that can be characterized as a 'municipal affair.' Second, the court 'must satisfy itself that the case presents an actual conflict between local and state law.' Third, the court must decide whether the state law addresses a matter of 'statewide concern.' Finally, the court must determine whether the law is 'reasonably related to resolution' of that concern and 'narrowly tailored' to avoid unnecessary interference in local governance. 'If the court is persuaded that the subject of the state statute is one of statewide concern and that the statute is reasonably related to its resolution and not unduly broad in its sweep, then the conflicting charter city measure ceases to be a 'municipal affair' pro tanto and the Legislature is not prohibited by article XI, section 5(a), from addressing the statewide dimension by its own tailored enactments." *State Bldg.*, 54 Cal. 4th at 556 (citations and brackets omitted).

### i. Municipal Affair

"No exact definition of the term 'municipal affairs' can be formulated and the courts have made no attempt to do so, but instead have indicated that judicial interpretation is necessary to give it meaning in each controverted case." *Cal. Fed. Sav. & Loan Assn.*, 54 Cal. 3d at 16 (citations and quotation marks omitted). That said, the California Supreme Court has offered some guidance in making this determination. "'Municipal affairs' as those words are used in the Constitution, refer to the internal business affairs of a municipality." *City of Walnut Creek v. Silveira*, 47 Cal. 2d 804, 811 (1957); *Comm. of Seven Thousand v. Superior Court*, 45 Cal. 3d 491, 505 (1988) (noting that a municipal affair is generally one that does not "affect persons outside of the municipality"). Moreover, legislative findings on the issue, while "entitled to great weight[,] . . . are not controlling." *Cnty. of Riverside v. Superior Court*, 30 Cal. 4th 278, 286 (2003). This is because "[t]he judicial branch, not the legislative, is the final arbiter of this question. It may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may

likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern. But . . . [t]he Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern.'" *Id.* at 286–87 (citations and brackets omitted).

In *Armas v. City of Oakland*, 135 Cal. App. 411 (1933), the Court of Appeal held that any state statute that "handicapped" the ability of the City to "control . . . fires . . . for the benefit of all its citizens" did not apply to charter cities because "[t]he organization, operation and control of municipal fire and police departments [are] a matter of local concern[, and] any move on the part of the legislature tending to interfere with or destroy the effective performance of those governmental functions would be contrary to the express limitations of section 6 of article XI of the Constitution except where such matters are of general public or state concern." *Id.* at 421. In *City of Walnut Creek*, the Supreme Court appeared to embrace the Legislature's inclusion of "fire apparatus" in the definition of "municipal improvement." 47 Cal. 2d at 812. And in *State Building*, the Supreme Court held that the construction of a fire station was "quintessentially a municipal affair" because a fire station constituted a "city-operated facility for the benefit of a city's inhabitants." 54 Cal. 4th at 559. The court also held that funding for such a project was itself a municipal affair. *Id.*

Based on this authority, the Court sees no error in the bankruptcy court's determination that the decision whether or not to outsource firefighting services is a municipal affair. Fire services are provided by the City largely (if not entirely) for the benefit of its inhabitants, and are paid for entirely by the city in which they operate. While a city's firefighting services may occasionally impact those outside the city— such as when they assist with firefighting efforts in neighboring cities—this does not overcome the overwhelmingly local nature of the service. It follows, then, that the City's decision as to the most cost-effective way to provide those services is also itself a municipal affair.

The Firefighters cite several statutes providing more or less that firefighters' labor conditions are an issue of statewide concern. *See generally* California Firefighters Procedural Bill of Rights Act, Cal. Gov. Code §§ 3250–60; *see also* Cal. Gov. Code § 53270(a) (finding that "the hiring of permanent career civilian federal, state, and local government firefighters by local agencies as specified in this section . . . constitutes a matter of statewide concern"); Cal. Civ. Proc. Code § 1299 ("The Legislature hereby finds and declares that strikes taken by firefighters . . . against public employers are a matter of statewide concern . . . ."); *Int'l Ass'n of Firefighters Local Union 230 v. City of San Jose*, 195 Cal. App. 4th 1179, 1202 (2011) ("In general, labor relations with public employees, including firefighters, are a matter of statewide concern . . . ."). This authority does not compel a different result. A municipality's initial choice to either establish an internal fire department or outsource firefighting services is distinct from issues surrounding the conditions under which firefighters work. Indeed, one case cited by the Firefighters makes precisely this distinction. *Prof'l Fire Fighters, Inc. v. City of L.A.*, 60 Cal. 2d 276, 294–95 (1963) (holding that labor statutes relating to the employment of firefighters "[did not] deprive local government (chartered city or otherwise) of the right to manage and control its fire departments but to create uniform fair labor practices throughout the state"). The Court therefore concludes that the outsourcing of firefighting services is a "municipal affair" within the meaning of the California constitution.

### ii. Conflict Between Statute and Municipal Action

Having concluded that the outsourcing of firefighting services is a "municipal affair," the Court has no trouble concluding that such outsourcing does not conflict with state law. The Firefighters contend that California Government Code sections 37103 and 56030 implicitly prohibit cities from outsourcing firefighting services to private entities because they do not specifically empower them to do so. While this logic applies to a general law city, *Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 309–16 (2012), it does not apply to a charter city.

Unlike a general law city, which has only those powers expressly conferred upon it by statute, a charter city's power derives from the constitution. *Id.* at 313–14. Thus, the lack of a statute authorizing a city to outsource firefighting services to private entities is not a restriction on a charter city's ability to do so. *Id.* Consequently, no conflict exists between these two statutes and the proposed municipal action here. And because no conflict exists, the Court finds that state law does not prohibit the City from outsourcing Firefighting services to a private entity.

## C. Leave to Amend

Finally, the Firefighters contend that the bankruptcy court should have granted them leave to amend, but do not show how they could amend their Complaint to save their claims. Indeed, the issues presented in their claim are pure questions of law, and only very basic (and seemingly undisputed) background facts are necessary to decide them. It is unclear what different facts could be alleged that would enable the Firefighters to maintain this cause of action. Thus, the claim was properly dismissed without leave to amend.

## VI. CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the bankruptcy court's order in full. The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

December 22, 2015

_____
          **OTIS D. WRIGHT, II**
    **UNITED STATES DISTRICT JUDGE**